UNITED STATES DISTRICT COURT **03-61272**
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,



          Plaintiff,

vs.

FORTY TWO THOUSAND DOLLARS
($42,000.00) IN UNITED STATES CURRENCY

          Defendant.

_____/

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, United States of America, hereby files this civil complaint for forfeiture *in rem* and states as follows:

1.     This is a civil action for forfeiture in rem of the defendant $42,000.00 in United States currency (hereinafter "the defendant currency") pursuant to Title 21, United States Code, Section 881(a)(6), Title 31, United States Code, Section 5317 (c)(2) and Title 18, United States Code, Section 981(a)(1)(A), as amended by the Civil Asset Forfeiture Reform Act of 2000, Title 18, United States Code, Section 983.

2.     This Court has subject matter jurisdiction pursuant to Title 28, United States Code, Section 1355.

3.     Venue lies in the United States District Court for the Southern District of Florida pursuant to Title 28, United States Code, Section 1395, as the defendant currency was seized in Broward County, Florida and will remain in this District's control throughout the pendency of this action.



## BACKGROUND ON COLOMBIAN BMDPE

4.      This case involves the laundering of drug proceeds through a series of currency deliveries at the instruction of Colombian money brokers who work for the Colombian narcotics trafficking cartels.

5.      The BMDPE as the term is used here, is a community of currency exchange brokers operating outside the established banking system in South America.  These brokers facilitate the exchange of proceeds from the sale of narcotics for local currencies or other forms of negotiable instruments, bypass the banking systems within their countries, avoid the scrutiny of the authorities, and deal directly with drug traffickers who wish to sell United States obtained narco-dollars. This underground financial system allows for the evasion of reporting and record keeping requirements mandated by the Bank Secrecy Act (31 U.S.C. § 5311 et.  seq.) as well as Colombian foreign exchange and import laws and tariffs.   The system works as follows:

a.      Colombian narcotics cartels export narcotics to the United States where they are sold for U.S. dollars.  In Colombia, the cartels contact a third party -a peso broker- to launder their drug money.  The peso broker enters into a "contract" with the Colombian cartel wherein he agrees to exchange pesos he controls in Colombia for currency the cartel controls abroad.  Once this exchange occurs, the cartel has effectively laundered its money and is out of the BMDPE process.  The peso broker, on the other hand, must now launder the currency he has accumulated abroad.

b.      The peso broker uses contacts to place the drug cash he purchased from the cartel into the banking system.  The peso broker, still operating in Colombia, now has a pool

2

of narcotics-derived funds to "sell" to seemingly "legitimate" Colombian importers and investors.

        c.      Colombian importers place orders for items and make payments through the peso broker.  Again, the peso broker uses contacts to purchase the requested items from manufacturers and distributors.  The peso broker pays for these goods using a variety of methods.

        d.      The purchased goods are shipped and then smuggled or otherwise fraudulently entered into Colombia.  The Colombian importer takes possession of his goods, having avoided paying Colombian import and exchange tariffs, pays the peso broker for the items with Colombian pesos.  The peso broker, who has made his money charging both the cartels and the importers for his services, uses those new pesos to begin the cycle once again.

        6.      The area of Miami-Dade County, Florida is well-known to law enforcement as a major drug source and money laundering center involving Colombian drug trafficking organizations and associated Colombian money brokers.  It is also well-known to law enforcement that these money brokers and their U.S. based agents utilize what is commonly known as a "cell" system to launder the proceeds of drug trafficking.  The "cell" system keeps the movement of drug money separate from the actual movement of drugs, utilizing a series of individuals otherwise unknown to each other by the use of cell phones, beepers and codes.  The system is set up to conceal or disguise the nature, source, ownership, and control of illegal drug proceeds by providing secure movement for the laundering of such currency.

7.      Utilizing the Colombian BMDPE, drug traffickers in Colombia are able to sell their illegal cash proceeds while the cash still remains in the United States. When pesos are paid by associated money brokers to the drug traffickers in Colombia, the money brokers or their intermediaries are given control of the illegal cash in the United States. Latin American businessmen who have outstanding debts in the United States then purchase the cash for pesos from these money brokers, although the businessmen never actually take possession of the cash. Instead, the money brokers direct their U.S. based agents to deliver the cash according to instructions supplied by the businessmen, usually to businesses or persons located in Florida. Hence, the "cell" system has been developed over the years as a clandestine method for facilitating the movement of such illegal drug cash.

8.      The totality of the circumstances surrounding the events leading to the seizure of the defendant currency is entirely consistent with the activity of a money laundering "cell" system as described above, is inconsistent with any form of legitimate business activity, and when viewed in the light of law enforcement expertise, can only be attributable to the illegal activity described below.

## FACTS OF THE CASE

9.      On or about January 31, 2003, agents from the Internal Revenue Service, Criminal Investigations Division and officers from the North Miami Beach Police Department (hereinafter "the agents") were conducting surveillance in the area of Pembroke Lakes Mall in Pembroke Pines, Florida. While conducting surveillance, the agents observed a white Honda Civic vehicle bearing Florida Tag V45-EYT being driven by a young white

4

Latin male, later identified as Duberney Grajales, a/k/a "El Campeon." The vehicle drove

slowly along the north side of the Sears store located in that mall. Shortly thereafter, the

vehicle came to a stop and another white Latin male, later identified as Nelson Alvarez,

("Alvarez") entered the passenger side. Alvarez entered the vehicle empty handed and the

car was driven to the North parking lot of the mall, near the entrance of the food court.

10.     Shortly thereafter, Alvarez exited the white Honda Civic carrying a yellow

manila envelope and headed towards the entrance of the mall food court. The white Honda

Civic left the mall area. At that time, the surveillance team split; one team followed the

white Honda Civic to Lakes Auto Wash and Wax, 6782 N.W. 169th Street, Hialeah, Florida.

The other team followed Alvarez and subsequently approached him.

11.     The agents requested and Alvarez gave verbal consent to search the manilla

envelope he had in his possession. The search disclosed the defendant currency.

12.     The agents requested and Alvarez provided a verbal waiver of his rights.

Alvarez gave the following information:

        a.     He left his native country in 2001 for the United States, and is
              presently seek political asylum through the INS.

        b.     He resides in a residence owned by his father located at 3201 S.W.
              134 Avenue, Davie, Florida. He has no employment in the United
              States and depends upon his family business in Colombia for
              financial support. He receives five thousand (U.S.$5,000.00) dollars
              per month from his family business in Colombia. The money is
              delivered by friends and family members who arrive from Colombia
              to Miami Florida. He also stated that he had sold some real estate in
              October of 2002 for the equivalent of $45,000.00 United States
              currency. He did not know the buyer of the real estate.

c.   On Monday, January 23, 2003, his father, Hector Alvarez, made contact with an organization in Medellin, Colombia, regarding the delivery of $40,000.00 in U.S. currency to him in Miami, Florida. He did not know either the name of the Medellin organization his father had contacted nor the contact telephone number and did not have any such information. Neither did he state the purpose of the $40,000.00.

d.   Both he and his father had purchased the $40,000.00 in United States currency with pesos at an exchange rate of 2,640 peso.

e.   At approximately 11:00 a.m. on January 31, 2003, Alvarez received a telephone call from a Latin male who identified himself as "El Campeon" from telephone number (786) 547-1554. El Campeon asked to speak to "Camilo" Camilo was the code name assigned to Alvarez by his father to be used in connection with the transfer of the defendant currency.

f.   After identifying himself as "Camilo," Alvarez arranged to meet with El Campeon at 1:30 p.m. at the Pembroke Lakes Mall in Pembroke Pines, Florida.

g.   At approximately 1:02 p.m. on that same date, El Campeon again called Alvarez to determine the exact location in the Mall for the 1:30 p.m. meeting.

h.   At the appointed time, a white Latin male (El Campeon) driving a white vehicle picked him up at the mall. Upon entering the vehicle, El Campeon informed Alvarez that he was delivering $45,000.00 in U.S. currency. Alvarez told El Campeon that he expected a $40,000.00 delivery, not $45,000.00. They then conducted a bundle count of the currency which totaled approximately $45,000.00.

i.   Alvarez stated that he was not the owner of the defendant currency and felt uneasy when he was asked to receive said currency in the parking lot.

j.   He had a gut feeling that the defendant currency was derived from drug proceeds.

6

k.   He is familiar with the black market dollar peso exchange in Colombia.

13.   At the end of the interview, a K-9 narcotics dog positively alerted to the presence of narcotics emanating from the yellow manila envelope in which the defendant currency was packaged.  The K-9 also alerted positively to the currency which was bundled and wrapped with rubber bands.

14.   The defendant currency totaling $42,000.00 was transported by the agents to the office for safe keeping.  The defendant currency was subsequently transported to the Bank for processing.

15.   A records check revealed that no currency transaction related reports of any kind have been filed by Alvarez with the Department of the Treasury concerning the defendant currency.

16.   Alvarez is not registered with the State of Florida as a currency broker or exchanger.

17.   Further surveillance of the white Honda Civic led to Lakes Auto Wash and Wax, 6782 N.W. 169th Street, Hialeah, Florida ("Lakes Auto Wash").  At Lakes Auto Wash, the agents observed a package, which they suspected contained currency, being delivered to El Campeon by the driver of another vehicle, a Blue Ford Focus.  The driver of the blue Ford Focus was later identified as Jorge Montoya.

18.   After the blue Ford Focus left Lakes Auto Wash, the agents followed it to the Vermillion Apartment Complex located 7165 N.W. 186 Street, Apt. 403, Hialeah, Florida.  A subsequent search of this apartment led to the discovery and seizure of an

7

additional $467,250.00 in United States currency contained in a suitcase that was being stored in at an apartment in a closet.

19.     Agents also seized a money laundering ledger which indicated that the $42,000.00 seized from Alvarez had been taken from the same "stash" as with the $467,250.00 seizure.

20.     Nelson Alvarez has made a claim for the $42,000.00 in United States currency, having filed a claim in the underlying administrative forfeiture proceedings, thus requiring the filing of this judicial forfeiture action.

## FORFEITURE ALLEGATIONS
## COUNT I (PROCEEDS)

21.     Plaintiff realleges paragraphs 4 through 20 above as if fully set forth herein.

22.     Based on the foregoing, the defendant currency constitutes monies furnished or intended to be furnished in exchange for controlled substances in violation of Title 21, United States Code, Section 801, et seq. or proceeds traceable thereto, and is thereby forfeit to the United States pursuant to Title 21, United States Code, Section 881(a)(6), as amended by the Civil Asset Forfeiture Reform Act of 2000, Title 18, United States Code, Section 983.

## COUNT II  (FAILURE TO FILE)

23.     Plaintiff realleges paragraphs 4 through 20 above as if fully set forth herein.

24.     A person who engages as a business in dealing in or exchanging currency is defined as a "currency dealer or exchanger" pursuant to 31 CFR 103.11(f). A "currency dealer or exchanger" or "a person engaged in the business of transmitting funds" is a

"domestic financial institution" within the meaning of 31 U.S.C. 5313 and 31 CFR 103.11(I). When a "domestic financial institution" is involved in a "transaction in currency" of more than $10,000.00, it is required to file a currency transaction report pursuant to Title 31, United States Code, Section 5313(a) and the regulations promulgated thereunder. A "transaction in currency" is defined by 31 CFR 103.11(r) as a transaction involving the physical transfer of currency from one person to another.

25.     Pursuant to Title 31, United States Code, Section 5317 (c)(2), any property involved in a violation or conspiracy to violate Title 31, United States Code, Section 5313(a), or property traceable to such property, is subject to forfeiture to the United States.

26.     Based on the foregoing, the defendant currency constitutes property involved in a violation or conspiracy to violate Title 31, United States Code, Section 5313(a), or is traceable to such property, and is thereby forfeit to the United States pursuant to Title 31, United States Code, Section 5317 (c)(2), Title 18, United States Code, Section 981(a)(1)(A), as amended by the Civil Asset Forfeiture Reform Act of 2000, Title 18, United States Code, Section 983.

## COUNT III (MONEY LAUNDERING)

27.     Plaintiff realleges paragraphs 4 through 20 above as if fully set forth herein.

28.     A "financial transaction" is defined in Title 18, United States Code, Section 1956 to mean a "transaction" which in any way or degree affects interstate or foreign commerce and involves the movement of funds by wire or other means or involves one or more "monetary instruments." The term "monetary instrument" means the coin or currency of the United States or any other country, checks, personal checks, bank checks, and money

orders. The term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery or other disposition, by whatever means effected.

29.     Title 18, United States Code, Section 1956(a)(1)(B)(i) - (ii) prohibits any person, knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct or attempt to conduct a financial transaction which in fact does represent the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such specified unlawful activity, or to avoid a reporting requirement under State or Federal law.

30.     Pursuant to Title 18, United States Code, Section1956 (c)(7)(a), the term specified unlawful activity" means any act constituting an offense listed in Title 18, United States Code, Section 1961(1).

31.     Included as a predicate offense listed in Title 18, United States Code, Section 1961(1)(D) is any offense involving the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance punishable under any law of the United States.

32.     Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any personal or real property involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956, or property traceable to such property, is subject to forfeiture to the United States.

33.     Based on the foregoing, the defendant currency constitutes personal property

10

involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i)-(ii), or is traceable to such property, and is thereby forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A), as amended by the Civil Asset Forfeiture Reform Act of 2000, Title 18, United States Code, Section 983.

WHEREFORE, the United States of America prays that process issue to bring the defendant currency within the jurisdiction of this Court by warrant of arrest in rem; that notice issue to all parties in interest to appear upon the return day of such process and duly intervene herein by claim and plea; that the defendant currency be condemned as forfeit to the United States of America; that an order for property disposal for the same be issued according to law; all pursuant to Title 21, United States Code, Section 881(a)(6), Title 31 United States Code, Section 5317 (c)(2) and Title 18, United States Code, Section 981(a)(1)(A), as amended by the Civil Asset Forfeiture Reform Act of 2000, Title 18, United States Code, Section 983; and that the Plaintiff be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: _____

LORNETTE A. REYNOLDS
ASSISTANT U.S. ATTORNEY
99 N.E. 4th Street, 7TH Floor
Miami, Florida 33132-2111
Tel.  (305) 961-9294
Fax: (305) 536-7599
Fla. Bar No. 0053955

11

## **VERIFICATION**

I, Kurt Hartwell, Special Agent with the Internal Revenue Service hereby declare

under penalty of perjury as provided by Title 28, United States Code, § 1746, that the

foregoing Complaint for Forfeiture <u>In Rem</u> is based upon information known to me, and

that the facts alleged therein are true and correct to the best of my knowledge and belief.

EXECUTED, on this _30th_ day of June, 2003.

KURT HARTWELL, SPECIAL AGENT
INTERNAL REVENUE SERVICE

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

03-61272

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

CIV ALTONAGA

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

FORTY TWO THOUSAND DOLLARS ($42,000.00) IN UNITED STATES CURRENCY

MAGISTRATE WHIT

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   DADE

Broward 03cv61272   Altonaga/Bandstra

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

LORNETTE A. REYNOLDS, AUSA
99 NE 4TH STREET, 7th Floor
(305) 961-9294

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   (BROWARD,)   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE,   HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | B☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | B☐ 690 Other | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | A☐ 530 General | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | A☐ 791 Empl. Ret. Inc. Security Act | | ☐ 890 Other Statutory Actions |
| | | B☐ 555 Prison Condition | | | A OR B |

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL UNLESS DIVERSITY.)

LENGTH OF TRIAL
via   2   days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ YES   ☒ NO

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   6/30/2003

SIGNATURE OF ATTORNEY OF RECORD

LORNETTE A. REYNOLDS, AUSA   _A. R. Wathes fory_

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

This form was electronically produced by Elite Federal Forms, Inc.